Robert G. McCOY, Linda E. McCoy and James A. McCoy, Plaintiffs–Appellants,

v.

The FRANKLIN SAVINGS ASSOCIA-TION and Mortgage Management Company, Defendants–Appellees.

No. 80–1189.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 20, 1980.

Decided Dec. 2, 1980.

Kimball R. Anderson, Winston & Straw, Chicago, Ill., for plaintiffs–appellants.

Howard M. Hoffmann, Chicago, Ill., for defendants–appellees.

Before CUMMINGS and BAUER, Circuit Judges, and TEMPLAR, Senior District Judge.*

CUMMINGS, Circuit Judge.

Plaintiffs appeal from a district court order dismissing, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, their claims under 12 U.S.C. § 1975 and 15 U.S.C. § 1640 alleging violations of the Bank Holding Company Act and the Truth–in–Lending Act respectively. We affirm.

---

* The Honorable George Templar, Senior District Judge of the District of Kansas, is sitting by designation.

## I. *Introduction*

Plaintiffs Robert and James McCoy are brothers; plaintiff Linda McCoy is Robert's wife. Defendant Franklin Savings Association (Franklin) is engaged in the residential real estate lending business in Chicago, Illinois. Mortgage Management Company (Management) of Oak Brook, Illinois, is Franklin's agent in handling mortgage loan applications and issuing commitments thereon.

In early August 1978, plaintiffs contracted to buy a two–flat building and coach-house at 2643 North Sheffield Avenue in Chicago from Robert and Hisae Tanaka. The sales contract required the Tanakas to make certain improvements (the Tanaka improvements) to the premises before the contemplated October 4, 1978, closing (Exhibit A to motion to dismiss).

Approximately one week later, Robert McCoy presented the sales contract to defendants and completed application for a mortgage loan of $63,900, an amount equivalent to 80% of the purchase price. On August 28, Franklin offered plaintiffs a written 45–day loan commitment (until October 12) for the $63,900 loan at 9⅞% interest with a 2% service charge and a $100 appraisal and inspection fee. One of the conditions of the loan commitment was that Federal Home Loan Mortgage Corporation appraisal "inspection form # 442" be executed prior to closing. A loan officer at Management told Robert McCoy that this provision referred to the completion of the Tanaka improvements specified in the sales contract. Plaintiffs accepted the loan commitment terms and on September 15 executed the final mortgage documents at Franklin's office. The sale was not closed within 45 days of the issuance of the commitment letter because the Tanakas had failed to complete the required improvements.

On October 1, plaintiffs took possession of the property without a closing.[1] On the same day, Robert McCoy called Management and requested an extension of the loan commitment. A loan officer allegedly agreed orally to a 45–day extension (until November 15) and promised to forward a written confirmation. No such confirmation was made, and any oral commitment would hardly comport with the statute of frauds.

On October 11, Robert McCoy told the same loan officer that the plaintiffs intended to begin costly improvements in addition to and not required by the sales contract. McCoy was allegedly told by the loan officer that such improvements would not affect the loan commitment or hinder the closing on the loan. Plaintiffs also undertook on their own to complete the Tanaka improvements and had "substantially" completed those improvements by November 10,[2] at which time they asked defendants to close the transaction. Defendants refused on the ground that plaintiffs had not completed the additional improvements discussed on October 11. Defendants of course did not want their collateral impaired by incomplete improvements.

On December 1, James McCoy spoke with the Office Manager of Management in order to ascertain what steps would be necessary to close the loan. Robert McCoy confirmed plaintiffs' understanding of this conversation in a letter to the Office Manager written on the same date (Exhibit B to the complaint). The letter indicates that the Office Manager requested plaintiffs to list the improvements which would or had been made on the property. Thereafter, an inspector would visit the premises and make a new appraisal on a Form 442 based on the improvements and, if satisfied, Franklin would put in escrow the difference between the original loan commitment of $63,900 and a new commitment, not to exceed $75,000, based on 80% of the reappraised value. The escrow account would be released when the improvements were completed.

---

1. Plaintiffs were still in possession of the property at the time of this suit.

2. At the October 1980 oral argument we were told by plaintiffs' counsel that the Tanaka improvements were still incomplete.

McCoy enclosed with his letter the requested list of projected improvements exclusive of the incomplete Tanaka improvements and indicated that all the listed construction would be completed within three to four months. McCoy stated that plaintiffs would accept Franklin's current interest rate and requested written confirmation of the conversation and a definite period–of–time commitment on that rate similar to the forty–five days in the original loan commitment. In this letter McCoy twice asked for a "new commitment". A new commitment letter was received by plaintiffs some months later.

In the interim plaintiffs allegedly made repeated subsequent calls to find out what steps were needed to complete the escrow arrangement referred to in McCoy's December 1 letter. On February 15, 1979, defendants allegedly told plaintiffs that they still had a loan commitment and that the mortgage funds would be released upon approval of a title indemnity policy from Chicago Title and Trust Company. On March 15, that company agreed to issue the policy, and Robert McCoy called Management so to inform the defendants. Management's loan officer at that time told McCoy that the mortgage funds would not be released until completion of the additional improvements. The loan officer also suggested that the McCoys "look elsewhere" for a mortgage. From April 16 through July 24, in conversations with Robert McCoy, James McCoy and their counsel defendants reconfirmed their position that the mortgage funds would not be released until completion of the additional improvements.

On July 9, Franklin again requested plaintiffs to prepare a list of improvements, and Robert McCoy did so on the same day. On July 24, Franklin issued a new written seven–day loan commitment to plaintiffs. This commitment was to expire on August 2 if not accepted by then and was for

$69,000 at an interest rate of 10¾% and a 2½% service charge. The commitment provided for $61,000 to be paid upon closing of the purchase and the remaining $8,000 to be paid upon completion of the construction listed in the Tanaka contract and Robert McCoy's letters of December 1, 1978, and July 9, 1979. An executed Form 442 again was required.[3] The offer also included a $200 appraisal and inspection fee in addition to the $100 appraisal and inspection fee plaintiffs had paid in August 1978. The commitment was conditioned on completion of all construction by August 31. Plaintiffs declined the offer and initiated this suit eight days after this second commitment letter expired.

Counts I and II of the complaint alleged federal claims under the Bank Holding Company Act and the Truth–in–Lending Act. Counts III–V contained pendent state law claims for breach of contract, tortious interference with contractual relations and infliction of severe emotional distress. On February 4, 1980, District Judge McGarr granted defendants' motion to dismiss Counts I and II with prejudice for failure to state a claim upon which relief can be granted and Counts III–V without prejudice for want of subject matter jurisdiction. Plaintiffs then brought this appeal.[4]

## II. *Dismissal of Count I Was Proper*

Count I of the complaint was brought under 12 U.S.C. § 1975, a provision of the Bank Holding Company Act which permits persons injured by a violation of 12 U.S.C. § 1972 to bring a treble damage suit. Section 1972(1)(C) prohibits tying arrangements and forbids banks to extend credit or furnish any service on condition

> "that the customer provide some additional credit, property, or service to such bank, other than those related to and usually provided in connection with a loan, discount, deposit or trust service."

---

**3.** At the oral argument defendants' counsel said an executed Form 442 was required to protect any loan by having the Tanaka and new improvements appraised. Plaintiffs do not contest that they never tendered an executed Form 442 in compliance with either commitment letter.

**4.** The propriety of the dismissal of the pendent state law claims is not an issue in this appeal.

Plaintiffs contend that the July 24, 1979, commitment offer constitutes an unlawful tying arrangement in that it required "additional * * * service to Franklin which is not related to or usually provided in connection with a mortgage loan" (Plaintiffs' App. A–7), to–wit, completion of the improvements listed in Robert McCoy's letters of December 1, 1978, and July 9, 1979. Pursuant to 12 U.S.C. § 1975, they sought three times their actual damage of $11,292 plus costs and $4,000 in attorneys' fees.

■ Judge McGarr dismissed Count I for failure to state a claim on the ground that the practice of conditioning mortgage loan commitments upon completion of improvements to the mortgaged property is "a traditional banking practice founded on genuine business need" and therefore exempt from the prohibitions of Section 1972 by virtue of the exception clause in Section 1972(1)(C) *supra* (Plaintiffs' App. B–3). We agree.

Section 1972 was intended only to "prohibit anti–competitive practices which require bank customers to accept or provide some other service or product or refrain from dealing with other parties in order to obtain the bank product or service they desire." Senate Banking and Currency Committee Report No. 91–1084, 91st Cong., 2d Sess. (1970), reprinted in 3 U.S.Code Cong. & Admin.News, pp. 5519, 5535 (1970); see also *Swerdloff v. Miami National Bank*, 584 F.2d 54, 58 (5th Cir. 1978). It "was not intended to interfere with the conduct of appropriate traditional banking practices". *Clark v. United Bank of Denver National Association*, 480 F.2d 235, 238 (10th Cir. 1973), certiorari denied, 414 U.S. 1004, or to prohibit attempts (like these) by banks to protect their investments. *Sterling Coal Company v. United American Bank*, 470 F.Supp. 964, 965 (E.D.Tenn.1979).

Plaintiffs do not claim that defendants violated Section 1972 in requiring completion of the Tanaka improvements under the terms of the first commitment letter. Indeed, they concede that the challenged conditions of the second commitment letter would have been permissible had they been included in the first commitment letter (Br. 11–12). The gravamen of their complaint is thus that defendants unilaterally varied the terms of their first commitment letter by requiring completion of major improvements not required by the first commitment letter but voluntarily undertaken by plaintiffs in October 1978. Plaintiffs may have a viable state law claim for breach of contract. Section 1972, however, is not concerned with modifications of the conditions of a loan agreement. It is concerned with the kind of conditions required, regardless of when they are imposed. The conditions imposed in both the first and second commitment letters are "related to and usually provided in connection with a loan" and therefore, as plaintiffs concede with respect to the first commitment letter, are not prohibited conditions under Section 1972. Accordingly Count I was properly dismissed.

III. *Dismissal of Count II Was Also Proper*

Count II was brought under 15 U.S.C. § 1640, a provision of the Truth–in–Lending Act which permits civil suits against creditors who have not complied with that Act or regulations promulgated thereunder. Plaintiffs claim that defendants violated Section 129 of the Act (15 U.S.C. § 1639) (hereinafter Section 1639) in three respects. First, plaintiffs allege that defendants fraudulently represented in the original (August 28, 1978) commitment letter that $63,900 in loan funds would be available at closing but have refused to release such funds and in the second (July 24, 1979) commitment letter offered to release only $61,000 at the then expected closing of the Tanaka contract on or before August 15, 1979.[5] This is said to violate paragraph

5. The second commitment letter was actually for $69,000, with $61,000 payable at closing and $8,000 upon completion of the Tanaka improvements and the substantial additional improvements specified in Robert McCoy's letters of December 1, 1978, and July 9, 1979 (Complaint Exhibit C). Although plaintiffs obtained a mortgage elsewhere, the closing had not occurred by October 20, 1980, when this case was argued before us.

(a)(1) of Section 1639 in that defendants failed to disclose "[t]he amount of credit of which the obligor will have the actual use, or which is or will be paid to him or for his account or to another person on his behalf."

Second, plaintiffs allege that defendants fraudulently misrepresented in 1978 that plaintiffs would have to pay only a 2% service charge and an appraisal and inspection fee of $100 in that defendants' commitment letter of July 24, 1979, provided for a 2½% service charge and an additional $200 appraisal and inspection fee. This is said to violate paragraph (a)(2) of Section 1639, which requires a creditor to disclose "[a]ll charges, individually itemized, which are included in the amount of credit extended but which are not part of the finance charge."

Finally, plaintiffs allege that defendants failed to identify the property to which their security interest would relate in that plaintiffs were not informed until the second commitment letter that they would be required to complete the proffered expensive improvements in addition to those specified in the sales contract and the original loan commitment letter. This, it is claimed, violates paragraph (a)(8) of Section 1639, which requires a creditor to disclose "[a] description of any security interest held or to be retained or acquired by the creditor with the extension of credit, and a clear identification of the property to which the security interest relates."

In Count II, plaintiffs requested $11,292 actual damages plus $1,000, which is "twice the amount of the finance charge * * * [but not] greater than $1,000" under 15 U.S.C. § 1640(a)(2)(A), and costs and attorney's fees under 15 U.S.C. § 1640(a)(3).

The first mortgage commitment letter of August 1978 plainly set forth in accordance with Section 1639(a)(1), (2) and (8) the amount of credit to be extended to the plaintiffs, all charges not part of the finance charge and a clear identification of the property to which the security interest would attach. It was extended to November 15 and then expired as admitted in plaintiffs' December 1, 1978, letter asking Management for a new commitment letter, again for a definite period of time. Such a letter was sent to plaintiffs on July 24, 1979, and expired by its terms 7 days thereafter without acceptance by plaintiffs. This letter also complied with the Act.[6]

■ The gravamen of Count II is that the July 24, 1979, commitment letter contained terms differing from those in the first commitment letter. But nothing in the Truth–in–Lending Act requires a bank to use the same terms in a second commitment letter after its first commitment letter has expired. Indeed, because of events that occurred subsequent to the required disclosures in the first commitment letter, the Act expressly permitted the defendants to abandon those obsolete disclosures before disbursement.[7]

On the facts alleged in this case, there simply has not been a belated revelation of previously undisclosed terms in violation of federal law, but rather at best a failure to perform under the first commitment, which may have been excused by plaintiffs' failure to complete the Tanaka improvements to be shown by a completed appraisal Form 442 which plaintiffs never submitted to defendants. Section 1640, which authorizes private damage suits, does not, however, provide a remedy for breach of contract. It

---

**6.** As Judge McGarr noted (Plaintiffs' App. B–4), since the second commitment letter was not accepted, there could be no violation of Section 1639 with respect to that letter. See *Bissette v. Colonial Mortgage Corp.*, 477 F.2d 1245 (D.C. Cir.1973); *Burgess v. Charlottesville Savings and Loan Ass'n*, 477 F.2d 40 (4th Cir. 1973); 12 C.F.R. §§ 226.8(a), 226.2(cc) (1974). *Dryden v. Lou Budke's Arrow Finance Co.*, 630 F.2d 641 (8th Cir. 1980), and *Postow v. Oriental Building Ass'n*, 390 F.Supp. 1130 (D.D.C.1975), which plaintiffs cite to us, are to similar effect. In

any event, plaintiffs do not claim that the second commitment letter violated Section 1639.

**7.** Thus 15 U.S.C. § 1634 provides:

"If information disclosed in accordance with this part is subsequently rendered inaccurate as the result of any act, occurrence or agreement subsequent to the delivery of the required disclosures, the inaccuracy resulting therefrom does not constitute a violation of this part."

authorizes only suits for noncompliance with the Act and regulations thereunder. As the Fourth Circuit has observed:

> "The Truth–in–Lending Act is a 'disclosure' law. * * * It is the obligation to disclose, not the duty of subsequent performance, towards which the Act is directed." *Burgess v. Charlottesville Savings and Loan Ass'n, supra,* at 44–45.

Plaintiffs' remedy, if they have one, is to be found in a suit for breach of contract, intentional interference with contractual relations and intentional infliction of emotional distress in state court.[8]

For the foregoing reasons, the district court properly dismissed Counts I and II for failure to state a claim upon which relief could be granted and Counts III–V without prejudice for want of federal jurisdiction.

Order affirmed.

---

**8.** We do not express any comments on the merits of such a suit (presently embodied in Counts III–IV of this federal complaint).