**Lance GAGE, Plaintiff,**

v.

**FIRST FEDERAL SAVINGS & LOAN ASSOCIATION OF HUTCHINSON, KANSAS, Stephen K. Brownell, and Charles Brown, Defendants.**

**Civ. A. No. 88–1228–T.**

United States District Court,
D. Kansas.

June 27, 1989.

James D. Oliver, J. Steven Massoni, Foulston, Siefkin, Powers & Eberhardt, Wichita, Kan., for plaintiff.

Gerald L. Green, Gilliland, Hayes–Schmidt, Dillon & Green, Hutchinson, Kan., for defendants.

## OPINION AND ORDER

THEIS, District Judge.

Currently pending before the court are defendant First Federal Savings and Loan Association of Hutchinson, Kansas' (First Federal) motion for appointment of a receiver and plaintiff's motion for attachment, temporary restraining order, and preliminary injunction. Plaintiff filed his complaint in April 1988, alleging fraud, breach of contract, and violation of the antitying provisions of the Home Owners Loan Act, 12 U.S.C. § 1464(q). Defendant First Federal filed a counterclaim seeking foreclosure of the mortgage at issue in the present case. First Federal seeks a receiver to collect the rents which plaintiff is now collecting from the tenants of the building subject to the mortgage. Plaintiff requests the attachment of the loan documents. Further, plaintiff seeks an injunction against foreclosure of the mortgage. In his reply brief, plaintiff stated that he is willing to forego attachment in favor of injunctive relief.

The court held a hearing on May 8, 1989. After considering the parties' briefs, the testimony and oral argument, exhibits, and post-hearing filings, the court is now prepared to rule and makes the following findings of fact and conclusions of law.

### Findings of Fact

This action arises out of a loan made by First Federal to plaintiff in the amount of $3,400,000.00 for the purchase of a office

building in Hutchinson, Kansas now known as the Trade Center. Plaintiff alleges that First Federal required, as a condition to making the loan, that plaintiff grant it an option to purchase, at plaintiff's cost, approximately 27% of the property which plaintiff was purchasing. First Federal admits only that plaintiff agreed to execute an option in favor of it in partial consideration for it making the loan to plaintiff.

The loan agreement provides in pertinent part:

(5) OPTION TO PURCHASE. Borrowers shall execute in favor of lender an option agreement giving lender the right and option to purchase from borrowers at any time during note years one (1) or two (2) that portion of the acquired site more particularly described on Exhibit B attached hereto which is made a part hereof ...

(6) CONDITIONS PRECEDENT TO LOAN. At or prior to the initial advance under the note, borrowers shall deliver or cause to be delivered to lender the following items, all of which are to be in form and substance satisfactory to lender and, where necessary, are to be duly executed and acknowledged:

(a) Closing Documents. This Loan Agreement, the option agreement, the note and the documents referred to in paragraph (3) hereof.

The option agreement provides in pertinent part:

In consideration of purchaser making a loan to seller pursuant to a written Loan Agreement executed of even date herewith, seller does hereby give and grant to purchaser and its successor and assigns the exclusive option to purchase the following described real property situated in Reno County, Kansas ...

This Option is given on the following terms and conditions:

1. OPTION CONSIDERATION. The consideration received by seller from purchaser for the granting of this option is the making of an acquisition loan by purchaser to seller pursuant to the terms of a written Loan Agreement executed of even date herewith.

The loan documents, on their face, indicate that the loan was conditioned on plaintiff granting First Federal an option to purchase a portion of the building. The court does not find it particularly relevant whether the option to purchase simply developed during the course of negotiations between First Federal and Douglas Chamberlain (plaintiff's former partner), as alleged by First Federal. Stephen Brownell, former chairman of the board of First Federal, testified in his deposition that by the time plaintiff objected to the inclusion of the option agreement, the loan had already been structured with the option and, if plaintiff did not agree to it, First Federal would not have made the loan. This testimony, coupled with the plain language of the loan documents, leads the court to conclude that the loan was conditioned on the granting of an option.

First Federal exercised the option and purchased the portion of the building. First Federal paid the purchase price, which resulted in the reduction of the debt owed by plaintiff. Plaintiff remained current in his loan payments until November 1987.

The option agreement required First Federal to construct a wall to separate the two portions of the building and to separate the utilities and the heating and cooling systems:

9. CONSTRUCTION OF PARTY WALL. In the event the option herein granted is exercised by purchaser, purchaser shall at its own expense construct a division wall or party wall on that portion of the South property line of the of the option site lying within the building which is currently partially located upon the option site. Such division wall or party wall shall be constructed in compliance with all applicable ordinances and shall be constructed in such manner that the center line thereof coincides with the South property line of the option site lying within the building. Such wall shall be constructed of concrete block or other comparable material and shall be built in a good, substantial, and workmanlike manner....

10. UTILITIES. In the event of the exercise of the option herein granted, purchaser shall

(a) Establish separate water, sewer, gas, electric, and other utilities for that portion of the building located upon the option site from those supplying the remainder of the building or enter into a written agreement with seller or its grantees, successors, or assigns providing for a means satisfactory to seller or its grantees, successors, or assigns for the allocation of the cost of the furnishing of such utilities to that portion of the building located upon the option site;

(b) Establish separate heating and air conditioning systems for that portion of the building located upon the option site from the remainder of the building or enter into a written agreement with seller its grantees, successors, or assigns providing for a means satisfactory to seller or its grantees, successors, or assigns for the allocation of the cost of maintaining and operating the then existing heating and air conditioning systems.

First Federal has not constructed the party wall, nor separated the utilities or the heating and cooling systems. First Federal denies that its failure to construct the party wall constitutes a breach of the option agreement. First Federal does admit that it failed to separate the utility lines and heating and cooling systems, but alleges that the utility splitting is contingent on the party wall issue.

First Federal is now operating under a conservatorship. The operation of First Federal is under the control of a managing agent who acts on behalf of the conservator, Federal Deposit Insurance Corporation, which is acting on behalf of the Federal Savings and Loan Insurance Corporation.

Stephen Brownell testified in his deposition that First Federal had never before required an option to purchase a part of the borrower's property as a condition to making a loan. First Federal initially desired the option to obtain a location for a branch office and possibly for its headquarters. How definite these plans were and exactly what was said to the plaintiff remains controverted. First Federal currently has no plans to open a branch office or move its headquarters to its portion of the building. First Federal never obtained the approval of the Federal Home Loan Bank Board for its contemplated branch office.

The option agreement imposed certain limitations on First Federal's leasing of space within its portion of the building:

14. LEASING.

. . .

(b) In the event the option herein granted is exercised by purchaser, purchaser shall not lease to any non-affiliated third parties any portion of the building currently located upon the option site until the earliest of the following dates: (i) six (6) months after closing, or (ii) the time when seller leases at least eighty percent (80%) of the space encompassed within the portion of the existing building which does not lie upon the option site.

In an agreement dated March 10, 1985, plaintiff expressly waived the provisions of paragraph 14(b) of the option agreement. Plaintiff testified in his deposition that he was aware that First Federal might lease at least some of its space to tenants. Plaintiff's understanding apparently was that First Federal would lease whatever space remained in its portion of the building after it opened the branch office that it intended to open.

First Federal currently has only one tenant, Cranford Business College, which formerly was plaintiff's tenant. Plaintiff had experienced a number of difficulties with Cranford Business College prior to the expiration of the lease. Cranford's owner, Sharon Arney, approached First Federal about leasing space in First Federal's side of the building. Arney apparently intended not to renew her lease with plaintiff. First Federal charges Cranford Business College a lower rental rate than plaintiff had charged. Under the current lease with First Federal, however, Cranford provides its own maintenance and janitorial services,

which had been included in its prior lease with plaintiff.

Plaintiff testified in his deposition that one of his tenants demanded lower rental rates before it would renew its lease. Plaintiff further testified that another tenant threatened to rent from First Federal since a lower rental rate was available there.

Plaintiff testified that the entire building needs a new roof. Plaintiff is unable to reroof his portion of the building without the dividing wall, since there would be nothing to stop the flow of water from his portion of the roof onto First Federal's side of the building. The lack of a dividing wall in the interior of the building allows people who properly belong only in First Federal's portion to enter plaintiff's side of the building.

Plaintiff testified that he has lost several potential purchasers of his portion of the building due to his difficulties with First Federal. One prospective purchaser, a corporation named Intrex, had entered into contracts with plaintiff to purchase several other tracts of land plaintiff owned in Hutchinson. Intrex did not go through with any of the sales. Another prospective purchaser, Lee Gerber, never entered into a contract with plaintiff. Plaintiff testified in his deposition that Gerber was looking for a group of investors to purchase the building. At the hearing, plaintiff testified that a Canadian businessman made an offer for the entire building. This offer was that the purchase be one hundred percent financed by First Federal. First Federal apparently rejected this offer.

First Federal has been unable to obtain Gage's approval of its plans for the dividing wall. Brownell acknowledged at the hearing that plaintiff was not required to consent to First Federal's proposal to move the wall eighteen (18) inches into Gage's side of the building. Further disputes remain regarding the materials to be used in building the wall. Plaintiff has insisted on concrete block, while First Federal has proposed sheet rock as a "comparable material" allowed by the option agreement.

Brownell acknowledged at the hearing that the dividing wall must be built.

### Conclusions of Law

I. First Federal's Motion for Appointment of a Receiver

■ Paragraph 10 of the mortgage provides in relevant part:

At any time during the existence of any such default, mortgagee shall be entitled to enter into possession of the premises, and to collect the rents, issues, and profits thereof, accrued and to accrue, and to apply the same on any indebtedness secured hereby. If mortgagee so elects, mortgagee may have a receiver appointed in any court of competent jurisdiction to collect such rents, issues, and profits under the direction of the court.

First Federal's motion does not set forth the reasons it is entitled to have a receiver appointed. It appears to be relying primarily on the provision in the mortgage quoted immediately above.

In a case involving a mortgage which gave the mortgagee the right "to make application for and obtain the appointment of a receiver for the Mortgaged Property," Chief Judge O'Connor of this District stated:

Appointment of a receiver is not automatic because of a clause in the mortgage agreement; the mortgagee must go through the normal legal channels to obtain a receiver. Likewise, the clause in the Mortgage and Security Agreement ... and paragraph 7 in the Consent Order ... give the mortgagee (plaintiff) the right to *seek* or *make application for* a receiver; they do not give plaintiff an automatic right to the appointment of a receiver.

The appointment of a receiver is an extraordinary remedy and is normally limited to situations where fraud, waste, or irreparable injury are occurring. *See First Federal Savings & Loan Ass'n v. Moulds*, 202 Kan. 557, 561–62, 451 P.2d 215, 219–20 (1969); *Browning v. Blair*, 169 Kan. 139, 145, 218 P.2d 233, 238 (1950).

*Balcor Mortgage Advisors, Inc. v. Harris,* No. 88–2179–0, slip op. at 19 (D.Kan. July 1, 1988) (emphasis in original). Defendant does not allege fraud, waste, irreparable injury or the like in its motion. The motion for appointment of a receiver shall be denied.

## II. Plaintiff's Motion for Attachment

■ Plaintiff filed a motion for attachment of the loan documents. The court previously granted this motion; however, the attachment was returned unexecuted. The loan documents themselves are apparently being held as collateral by one of the federal agencies involved in First Federal's operations (either the Federal Deposit Insurance Corporation, the Federal Savings and Loan Insurance Corporation, or the Federal Home Loan Bank Board). Plaintiff's initial fear was that the negotiable instruments would be negotiated by First Federal to someone who would qualify as a holder in due course. In a suit on the note by a holder in due course, plaintiff would be unable to assert any defenses. *See* K.S.A. § 84–3–305(2). Attachment of the loan documents themselves is not be necessary given that (1) the documents are apparently pledged as collateral to the relevant federal agency, and therefore cannot be negotiated by First Federal; and (2) First Federal is seeking foreclosure, which means that it would not negotiate the note even if it had possession of the note.

The court will order that the *ex parte* attachment order be dissolved.

## III. Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction

The standards for obtaining injunctive relief are well established:

To obtain a preliminary injunction, a movant must establish that the injunction would not be adverse to the public interest; that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; that the movant will suffer irreparable injury unless the injunction issues; and that there is a substantial likelihood that the movant will eventually prevail on the merits.

*City of Chanute v. Kansas Gas & Electric Co.,* 754 F.2d 310, 312 (10th Cir.1985). When irreparability exists and the balance of hardships tips in favor of the movant, it will ordinarily be enough that the movant "has raised questions going to the merits so serious, substantial, difficult and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." *Community Communications Co., Inc. v. City of Boulder,* 660 F.2d 1370, 1375–76 (10th Cir.1981) (quoting *Lundgrin v. Claytor,* 619 F.2d 61, 63 (10th Cir.1980)), *cert. dismissed,* 456 U.S. 1001, 102 S.Ct. 2287, 73 L.Ed.2d 1296 (1982).

■ The relevant provision of the Home Owners Loan Act (HOLA) provides:

An association shall not in any manner extend credit, lease, or sell property of any kind, or furnish any service, or fix or vary the consideration for any of the foregoing, on the condition or requirement—

(A) that the customer shall obtain additional credit, property, or service from such association, or from any service corporation or affiliate of such association, other than a loan, discount, deposit, or trust service;

(B) that the customer provide additional credit, property, or service to such association, or to any service corporation or affiliate of such association, other than those related to and usually provided in connection with a similar loan, discount, deposit, or trust service; and

(C) that the customer shall not obtain some other credit, property, or service from a competitor of such association, or from a competitor of any service corporation or affiliate of such association, other than a condition or requirement that such association shall reasonably impose in connection with credit transactions to assure the soundness of credit.

12 U.S.C. § 1464(q)(1). These three subsections prohibit tying, reciprocal, and exclusive dealing arrangements, (subsections A,

B, and C, respectively) and are referred to as a group as "antitying" provisions. *See Bruce v. First Federal Savings & Loan Ass'n*, 837 F.2d 712, 714 n. 1 (5th Cir.1988). Although the statute is written in the conjunctive, implying that a plaintiff must plead and prove violations of all three subsections, it should be read in the disjunctive. *Id.* at 717. Plaintiff is alleging a violation of subsection (B): that he was required, as a condition of the loan, to provide additional property (the option agreement) to defendant; further, that the additional property is not usually provided in connection with a similar loan.

The HOLA authorizes injunctive relief "against threatened loss or damage by reason of a violation of paragraph (1), under the same conditions and principles" generally governing courts in equity. 12 U.S.C. § 1464(q)(2)(A). The HOLA additionally provides a treble damage remedy for "any person who is injured in his business or property by reason of anything forbidden in paragraph (1)." *Id.* § 1464(q)(3).

Section 1464(q) of the HOLA was added by the Thrift Institutions Restructuring Act, Title III of the Garn–St. Germain Depository Institutions Act of 1982, Pub.L. No. 97–320, 1982 U.S.Code Cong. & Admin. News (96 Stat.) 1469. The legislative history states that the bill subjects federal thrift institutions to antitying restrictions generally comparable to those applicable to bank holding companies under the Bank Holding Company Act of 1956, as amended. S.Rep. No. 536, 97th Cong., 2d Sess. 17, 55, *reprinted in* 1982 U.S.Code Cong. & Admin. News 3054, 3071, 3109.

■ The antitying provisions of the Bank Holding Company Act (BHCA) provide in pertinent part:

(1) A bank shall not in any manner extend credit, lease or sell property of any kind, or furnish any service, or fix or vary the consideration for any of the foregoing, on the condition or requirement—

(A) that the customer shall obtain some additional credit, property, or service from such bank other than a loan, discount, deposit, or trust service;

. . .

(C) that the customer provide some additional credit, property, or service to such bank, other than those related to and usually provided in connection with a loan, discount, deposit, or trust service;

. . . or

(E) that the customer shall not obtain some other credit, property, or service from a competitor of such bank, a bank holding company of such bank, or any subsidiary of such bank holding company, other than a condition or requirement that such bank shall reasonably impose in a credit transaction to assure the soundness of the credit.

. . . .

12 U.S.C. § 1972(1). The BHCA also authorizes a treble damage remedy and injunctive relief. *Id.* §§ 1975–1976.

The antitying provisions of the BHCA were, in turn, patterned after the Sherman Antitrust Act, 15 U.S.C. § 1 *et seq.* Unlike the antitrust laws, however, under the BHCA tying arrangements are made unlawful without any showing of adverse effects on competition or other restraints of trade and without any showing of the degree of bank control over the tying product or service. Further, the prohibitions apply regardless of the amount of commerce involved. *Bruce*, 837 F.2d at 718 & n. 10 (quoting, *inter alia*, S.Rep. No. 1084, 91st Cong., 2d Sess. 45, *reprinted in* 1970 U.S. Code Cong. & Admin.News 5519, 5558).

The antitying provisions of the HOLA parallel the antitying provisions of the BHCA, *see Bruce*, 837 F.2d at 716 n. 7, as is apparent from a reading of the two statutes. The court will therefore consider cases decided under the BHCA in the present dispute involving the HOLA.

■ Plaintiff has asserted that because of the alleged violation of the HOLA, the note and mortgage are unenforceable. In a case involving the BHCA one court stated:

the statute also does not say that any actual loan in violation of its terms is unenforceable. Section 1975 permits a

treble damage action by an injured party, but an obligation to pay back a loan actually made is not an injury.

*Exchange National Bank of Chicago v. Daniels,* 768 F.2d 140, 144 (7th Cir.1985). As the plaintiff points out, *Daniels* is factually distinguishable. The court in *Daniels* found the promissory note to be unconditional on its face. *Id.* at 143. The alleged wrongdoing was on the part of two individuals who promised that if the borrowers obtained the loan, they (the other two individuals) would repay the bank. *Id.* In the present case, the loan documents executed by plaintiff contained the alleged offensive conditions.

■ In *Kaiser Steel Corp. v. Mullins,* 455 U.S. 72, 102 S.Ct. 851, 70 L.Ed.2d 833 (1982), the Supreme Court explained the availability, in a contract action, of the defense of illegality under the antitrust laws. An illegal promise is subject to the defense of illegality. *Id.* at 82, 102 S.Ct. at 859. However, a promisor may not avoid performing a perfectly legal promise because he has also made a separate, illegal promise. *Id.* at 81 n. 7, 82, 102 S.Ct. at 858, 859. The *Daniels* case appears consistent with *Kaiser Steel* (even though the Seventh Circuit did not mention *Kaiser Steel*). The note in *Daniels* was separate from the allegedly illegal promise regarding repayment. The legal promise could, therefore, be enforced.

At this stage of the case, the court need not address whether the two promises at issue here (the promise to repay and the promise to grant an option) are separate promises or whether they constitute one promise. Even if the entire loan agreement is unenforceable, the court may have the option of ordering the repayment of the loan proceeds under a quantum meruit theory or of using the amount owing on the loan as a setoff to any recovery plaintiff obtains under the HOLA. The court cannot rule at the present time that the loan obtained by plaintiff may be forgiven.

### A.  Public Interest

■ The issuance of an injunction against foreclosure would not be adverse to the public interest. To the extent that the public interest is involved here, it would be served by preventing First Federal from enforcing an allegedly illegal loan agreement.

### B.  Balance of the Hardships

An injunction will merely delay the attempted foreclosure. The court has not been asked to permanently enjoin First Federal from foreclosing. The court has not declared the note and mortgage to be unenforceable. Any harm to First Federal would be monetary. The note is in default; according to First Federal's brief, the principal balance remaining due is in excess of $2.5 million. Accrued interest as of December 1, 1988, was in excess of $300,000. Interest is accruing at a daily rate of $753.84. Assuming plaintiff is successful and recovers treble damages from First Federal, the amount due on the note, plus all accrued interest, may be a setoff. Thus, the risk of harm does not appear to be severe. Further, the court could order plaintiff to post a bond or order that the monthly mortgage payment or the rents plaintiff receives be paid into court in lieu of a bond.

The threatened injury to plaintiff is more than monetary. He is in danger of losing his portion of the property through foreclosure. First Federal required the option, exercised the option, and allegedly breached the option agreement regarding the party wall, utilities, and heating and cooling systems. Plaintiff did cease making his payments on the note. As between the two parties, the court finds it is fair to require First Federal to bear whatever hardship results from the loan transaction.

### C.  Irreparable Harm

■ Denial of injunctive relief would cause plaintiff irreparable harm. Plaintiff would lose the property if First Federal were allowed to foreclose. Since property is unique, the legal remedy of damages is inadequate. *See Sundance Land Corp. v. Community First Federal Savings & Loan Ass'n,* 840 F.2d 653, 661 (9th Cir. 1988) (applying HOLA); *Bean v. Indepen-*

dent American Savings Ass'n, 838 F.2d 739, 743 (5th Cir.1988) (granting injunction against foreclosure pending appeal). The court finds that foreclosure is the type of "threatened loss" contemplated by the HOLA's injunctive relief provision. 12 U.S.C. § 1464(q)(2)(A).

## D. Likelihood of Success on the Merits

The antitying provisions of the BHCA were "not intended to interfere with the conduct of appropriate traditional banking practices." McCoy v. Franklin Savings Ass'n, 636 F.2d 172, 175 (7th Cir.1980) (quoting Clark v. United Bank of Denver, 480 F.2d 235, 238 (10th Cir.), cert. denied, 414 U.S. 1004, 94 S.Ct. 360, 38 L.Ed.2d 240 (1973)); see Parsons Steel, Inc. v. First Alabama Bank, 679 F.2d 242, 245 (11th Cir.1982); B.C. Recreational Industries v. First National Bank, 639 F.2d 828, 831 (1st Cir.1981); Duryea v. Third Northwestern National Bank, 606 F.2d 823, 825 (8th Cir.1979); Nordic Bank PLC v. Trend Group, Ltd., 619 F.Supp. 542, 556 (S.D.N.Y.1985). Nor was it meant to prohibit attempts by banks to protect their investments. Parsons Steel, 679 F.2d at 245; McCoy, 636 F.2d at 175.

A plaintiff must plead and prove three things to recover under the antitying provisions of the BHCA: (1) that the banking practice in question was unusual in the banking industry; (2) that the banking practice is an anticompetitive tying arrangement; and (3) that the practice benefits the bank. Rae v. Union Bank, 725 F.2d 478, 480 (9th Cir.1984) (citing Parsons Steel, 679 F.2d at 246). The court shall apply these standards in the present case under the HOLA.

As for the first factor, the practice involved in the present case is unusual in the banking industry. This conclusion is based on the testimony that First Federal had never before included an option agreement such as is involved here in a loan transaction.

As for the third factor, the practice greatly benefits First Federal in excess of what is necessary to protect its investment. A lender is entitled to protect its invest-ment, as long as no anticompetitive practices are involved. Parsons Steel, 679 F.2d at 245. There is no evidence that the plaintiff was already deeply in debt with First Federal. First Federal did not need any additional protection for its loan other than the mortgage it did obtain. In the event of a default, First Federal would have the option of foreclosing its mortgage, thereby protecting its investment. Further, the option agreement did not in fact give First Federal any additional protection for its loan because the option was not exercisable only on default; rather, the option was exercisable at First Federal's wish. First Federal was benefited by purchasing a portion of the building at plaintiff's cost.

As for the second factor, the practice appears to be an anticompetitive reciprocal arrangement. The court has found no cases on point, but the potential anticompetitive effects are clear. Since approximately one third of the building is owned by First Federal, plaintiff would be expected to have difficulties finding a lender other than First Federal if he needed to borrow money for improvements on his portion. If plaintiff tried to sell his portion, the purchaser would be expected to have difficulties finding a lender other than First Federal to finance the purchase. Other lenders might not be interested in transacting business with plaintiff due to First Federal's ownership of an undivided portion of the building. As long as the situation continued, plaintiff would be locked into a relationship with First Federal. Further, with the foreclosure counterclaim pending, plaintiff will have difficulty selling the building and obtaining and keeping tenants due to the uncertainties involved with a pending lawsuit.

Some courts have discussed what requirements a bank may impose which do not constitute a tying arrangement. The requirement that the borrower complete improvements on the mortgaged property is not a tying arrangement. McCoy v. Franklin Savings Ass'n, 636 F.2d 172, 175 (7th Cir.1980). The requirement that financial control of an enterprise be placed in new hands when necessary to protect the

lender's investment is not a tying arrangement. *Parsons Steel, Inc. v. First Alabama Bank,* 679 F.2d 242, 246 (11th Cir. 1982). The requirement that the borrower hire an outside business advisor is not a tying arrangement. *B.C. Recreational Industries v. First National Bank,* 639 F.2d 828, 832 (1st Cir.1981); *Tose v. First Pennsylvania Bank,* 648 F.2d 879, 897–98 (3d Cir.), *cert. denied,* 454 U.S. 893, 102 S.Ct. 390, 70 L.Ed.2d 208 (1981). The requirement that the borrower execute an option to purchase certain property is not a tying arrangement because the borrower had the choice of exercising the option (and purchasing the property) or not. *Nordic Bank PLC v. Trend Group, Ltd.,* 619 F.Supp. 542, 553 (S.D.N.Y.1985). A lender may require a debtor in a precarious financial position to employ a business advisor designated by the lender, to release financial control to an individual designated by the lender, to maintain interest-free deposits with the lender, to provide new collateral, to provide collateral in excess of the amount of outstanding debt, or to provide letters of credit. *Id.* at 556–57.

A few courts have addressed what does constitute an unlawful tying arrangement. A requirement that the borrower purchase real estate from the lender as a condition to obtaining a loan to finance other real estate is a violation of the BHCA. *Sharkey v. Security Bank & Trust Co.,* 651 F.Supp. 1231, 1233 (D.Minn. 1987). Requiring a borrower to guarantee loans for which the borrower was not already responsible states a claim under the BHCA. *Nordic Bank PLC,* 619 F.Supp. at 557. Requiring the borrower to construct two motels on other property (owned by borrower but unrelated to the loan transaction) and convey them to the lender as a part of a loan fee states a claim under the HOLA. *Sundance Land Corp. v. Community First Federal Savings & Loan Ass'n,* 840 F.2d 653, 661–64 (9th Cir.1988). Requiring the transfer of a principal payment previously made on one loan to the payment of interest on a loan which the lender is extending and requiring the participation in the loan by other lenders states a claim under the HOLA. *Bruce v.*

*First Federal Savings & Loan Ass'n,* 837 F.2d 712, 718 (5th Cir.1988).

Unlike the situation in *Nordic Bank PLC,* in which the borrower executed an option to purchase certain property and thus had control over whether the purchase took place, in the present case plaintiff executed an option to sell certain property to First Federal. First Federal thus controlled whether the purchase took place. The court finds the present case more akin to *Sharkey,* 651 F.Supp. 1231 (in which the borrower was required to purchase other real estate from the lender) and *Sundance Land,* 840 F.2d 653 (in which the borrower was required to convey other property to the lender). Plaintiff has demonstrated a likelihood of success on the merits of his claim for breach of the HOLA. A preliminary injunction is appropriate. The court will enjoin First Federal from foreclosing the mortgage until a decision on the merits of plaintiff's claims or until further order of the court.

## IV. Conclusion

Plaintiff meets the four requirements for the issuance of a temporary restraining order and preliminary injunction. First Federal asserts, however, that plaintiff does not qualify for injunctive relief under section 1464(q)(2)(A) of the HOLA, which provides that "Any person may sue for and have injunctive relief, in any court of the United States having jurisdiction over the parties, against threatened loss or damage *by reason of a violation of paragraph (1),* ..." 12 U.S.C. § 1464(q)(2)(A) (emphasis added). First Federal asserts that plaintiff has not been injured "by reason of" the alleged tying violation. First Federal's position is that plaintiff must prove that his default on the note was caused by the alleged violation. First Federal's construction of the statute is too narrow. Plaintiff has alleged loss or harm by reason of the violation: First Federal's allegedly illegal condition caused plaintiff to sell a portion of the building to it. Resulting directly therefrom are: First Federal's failure to construct a party wall; its failure to split the utilities and heating and

cooling systems; and a potential loss of tenants or purchasers. Plaintiff alleges that these problems have made the building unmarketable; further, that if plaintiff could sell his portion of the building, no lender other than First Federal would be willing to finance the sale. Plaintiff has alleged sufficient harm arising from the violation of the HOLA to warrant injunctive relief.

In lieu of a bond, the court will order both plaintiff and First Federal to pay into the court the gross monthly rentals received from the tenants in the building, commencing with rentals received on July 1, 1989, and continuing thereafter until further order of the court. These payments shall be invested by the clerk in an interest bearing account pending final judgment in this action or further order of the court. The funds shall be held for the benefit of both plaintiff and First Federal. Within fifteen (15) days from the date of this order, counsel for both parties shall prepare an order complying with the requirements of D.Kan. Rule 126(c) regarding the specifics of where and how the payments shall be invested. If the parties cannot agree on the manner of investment, the parties shall so notify the court and the court will decide.

IT IS BY THE COURT THEREFORE ORDERED that defendant First Federal's motion for the appointment of a receiver is hereby denied.

IT IS FURTHER ORDERED that plaintiff's motion for attachment is hereby denied and the court's order of attachment (Dk. No. 28) is hereby dissolved.

IT IS FURTHER ORDERED that defendant First Federal is hereby preliminarily enjoined, through any director, officer, agent, employee, representative, or successor, including the Federal Deposit Insurance Corporation, and any kindred federal agencies, from prosecuting any action seeking to enforce any rights and remedies under the Loan Agreement, Note and Mortgage, all dated September 10, 1984 and entered into between the plaintiff, Lance Gage, and First Federal.

IT IS FURTHER ORDERED that commencing July 1, 1989 and continuing each month thereafter, plaintiff and First Federal shall pay into the clerk of the court the gross monthly rentals received from the property at issue in this action. Within fifteen (15) days from the date of this order, counsel shall submit an order complying with D.Kan.Rule 126(c) specifying the manner of investment.