STERLING SAVINGS BANK, Plaintiff,

v.

CITADEL DEVELOPMENT COMPANY, INC.; J. Kenyon Eagon; Heather Eagon; Eagon Capital Ventures, Inc.; Mark S. Dane; Claudia P. Dane, Defendants.

Civil No. 09–404–AC.

United States District Court, D. Oregon.

Sept. 10, 2009.

Charles R. Markley, Sanford R. Landress, Greene & Markley, PC, Portland, OR, for Plaintiff.

Nena Cook, Sussman Shank, LLP, Portland, OR, for Defendants.

## ORDER

HAGGERTY, District Judge:

Magistrate Judge Acosta has issued a Findings and Recommendation [39] in this action. The Magistrate Judge recommends granting defendants' Motion to Strike [19] and defendants' Motion to Dismiss Plaintiff's Claim for Appointment of Receiver [16] and denying plaintiffs Motion to Appoint a Receiver [9]. No objections were filed, and the case was referred to this court.

The matter is now before me pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b). When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation of the Magistrate Judge. *Campbell v. United States Dist. Ct.,* 501 F.2d 196 (9th Cir.1974).

No clear error appears on the face of the record. This court adopts the Findings and Recommendation in its entirety.

### *CONCLUSION*

The Findings and Recommendation [39] is adopted. Defendants' Motion to Strike [19] and defendants' Motion to Dismiss Plaintiff's Claim for Appointment of Receiver [16] are GRANTED and plaintiff's Motion to Appoint a Receiver [9] is DENIED without prejudice. IT IS SO ORDERED.

## FINDINGS AND RECOMMENDATION

ACOSTA, United States Magistrate Judge:

### *Introduction*

Currently before the court is plaintiff Sterling Savings Bank's ("Sterling") motion to appoint a receiver, along with related motions to dismiss and to strike certain evidence. Sterling initiated this action against Citadel Development Company ("Citadel") and J. Kenyon Eagon, Heather Eagon, and Eagon Capital Ventures, Inc. (the last three collectively referred to as the "Eagon Defendants") to foreclose on the real property (the "Property" or "Scott's Bluff") identified in the deed of trust ("Deed of Trust") used to secure Citadel's debt to Sterling. J. Kenyon Eagon is a guarantor of Citadel's debt to Sterling. (Declaration of Robert Luby ("Luby Decl.") ¶ 4.) Sterling argues that the court should appoint a receiver because Citadel consented to appointment of a receiver in the Deed of Trust. Additionally, Sterling argues that a receiver is necessary to preserve and protect the property or, alternatively, that a receiver is necessary to sell the property with the court's approval. Defendants argue that a receiver is not necessary and that consent to a receiver in the Deed of Trust does not allow the court to bypass the required factor-weighing analysis, The court concludes that consent to a receiver is not dispositive of the issue and that Sterling has not produced sufficient evidence of the receivership factors outlined in *Canada Life Assurance Co. v. LaPeter,* 563 F.3d 837, 844 (9th Cir.2009). Therefore, Sterling's motion to appoint a receiver should be denied at this time.

### *Background*

On August 31, 2006, Citadel borrowed $2,070,000.00 from Sterling, and J. Kenyon Eagon, president of Citadel, executed a promissory note (the "Note") in favor of Sterling. (Luby Decl., Ex. 2 at 1.) The Note was secured by the Deed of Trust including the Property, which is commonly known as Scott's Bluff. (Luby Decl., Ex, 1 at 1.) The Deed of Trust named Pacific Northwest Title ("PNW Title") as the Property's trustee. (Luby Decl., Ex. 1 at 2.) Citadel assigned all lease revenue from the Property to Sterling but retained a license to continue receiving such revenue until default occurred. (Luby Decl., Ex. 1

at 4–5.) The Property is bare land and is not currently generating any rental income. (Declaration of J. Kenyon Eagon ("Eagon Decl.") ¶ 2.)

Citadel has defaulted on the Note. (Luby Decl. ¶ 5.) The Deed of Trust provides that, upon Citadel's default, Sterling has the right to possess, sell, or dispose of the Property. (Luby Decl., Ex. 1 at 7.) The principal sum due is $1,964,488.01. (Luby Decl. ¶ 5.) Interest, late charges, and fees through April 1, 2009, total $148,240.48. (Luby Decl. ¶ 5.)

The Deed of Trust also imposes the duty upon Citadel to manage, preserve, and protect the Property. In section 5.7, the Deed of Trust states:

> Grantor covenants: (a) to insure the Subject Property ...; (b) to keep the Subject Property in good condition and repair; (c) ... not to remove or demolish the Subject Property or any part thereof; not to alter, restore or add to the Subject Property.; (d) ... to complete or restore promptly and in good and workmanlike manner the Subject Property, or any part thereof which may be damaged or destroyed ...; (e) to comply with all laws, ordinances, regulations and standards ...; (f) not to knowingly commit or permit waste of the Subject Property; (g) to do all other acts which from the character or use of the Subject Property may be necessary to maintain and preserve its value; (h) not to knowingly make any use of the Subject Property which would invalidate any insurance thereon which Grantor is required to carry pursuant to the Loan Agreement; and (I) not to construct any improvements....

(Luby Decl., Ex. 1 at 10–11.) The Deed of Trust also reflects that the parties contemplated the appointment of a receiver by the court in the event of Citadel's default:

> At any time after Default, Beneficiary [Sterling] and Trustee [PNW Title] shall

each have all the following rights and remedies:

> (a) To declare all Secured Obligations immediately due and payable;
>
> ....
>
> (d) To apply to a court of competent jurisdiction for and obtain appointment of a receiver of the Subject Property as a matter of strict right and without regard to the adequacy of the security for the repayment of the Secured Obligations, and Grantor hereby consents to such appointment, the existence of a declaration that the Secured Obligations are immediately due and payable, or the filing of a notice of default;

(Luby Decl., Ex. 1 at 14–15.)

Homes Worth Keeping, L.L.C. ("Homes Worth Keeping") offered to purchase the Property for $1,050,000.00 on or before April 24, 2009. (Luby Decl., Ex. 4 at 1, 2.) The Defendants, however, did not agree to sell the Property. (Luby Decl. ¶ 4.) Sterling submitted evidence that the Defendants would have been willing to sell the Property if Sterling would have forgiven any outstanding balance due on the loan after the Property's sale. (Luby Decl. ¶ 4, Ex. 3, 5.) In its brief, Sterling claimed that it would suffer harm by being unable to accept offers, such as the offer from Homes Worth Keeping, and that a receiver is necessary to sell the property. (Luby Decl. ¶ 4.) At the hearing, however, Sterling shifted course: it stated that it no longer sought to have the Property sold, but it argued that a receiver still was necessary to preserve and protect the Property. Sterling's complaint is for the foreclosure of the Deed of Trust, for breach of a guaranty by the Eagon Defendants, and for the appointment of a receiver. Currently, Sterling is seeking foreclosure of real property in eight other cases against the Eagon Defendants and their

various business entities. (Pl.'s Reply to Mot. to Appoint a Receiver, Ex. 1.)

*Legal Standard*

### 1. Motion to Strike Evidence of Compromise Negotiations

Federal Rule of Evidence 408 ("Rule 408") provides:

(a) Prohibited uses.—Evidence of the following is not admissible on behalf of any party, when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction:

(1) furnishing or offering or promising to furnish—or accepting or offering or promising to accept—a valuable consideration in compromising or attempting to compromise the claim; and

(2) conduct or statements made in compromise negotiations regarding the claim, except when offered in a criminal case and the negotiations related to a claim by a public office or agency in the exercise of regulatory, investigative, or enforcement authority.

(b) Permitted uses.—This rule does not require exclusion if the evidence is offered for purposes not prohibited by subdivision (a). Examples of permissible purposes include proving a witness's bias or prejudice; negating a contention of undue delay; and proving an effort to obstruct a criminal investigation or prosecution.

FED.R.EVID. 408. One purpose of Rule 408 is the "promotion of the public policy favoring the compromise and settlement of disputes." FED.R.EVID. 408, advisory committee notes; *United States v. Contra Costa County Water Dist.*, 678 F.2d 90, 92 (9th Cir.1982).

### 2. Motion to Dismiss for Failure to State a Claim

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows dismissal for "failure to state a claim upon which relief can be granted." FED.R.CIV.P. 12(b)(6). A complaint does not require detailed factual allegations to survive dismissal, but it must provide the factual grounds upon which the plaintiff is entitled to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The court must construe the complaint in the light most favorable to the plaintiff, presuming all factual allegations to be true and drawing all reasonable inferences in the plaintiff's favor. *E.g. Doe v. United States*, 419 F.3d 1058,1062 (9th Cir.2005). The facts, taken as true, still must "plausibly suggest[ ]" at the plaintiff is entitled to relief. *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955. Merely alleging facts that are not inconsistent with a theory entitling the plaintiff to relief is not sufficient to survive dismissal. *Id.* If the allegations would not entitle the plaintiff to relief, the court should dismiss the claim quickly in the interest of judicial efficiency. *See id.* at 558.

### 3. Motion to Appoint a Receiver

■ "[F]ederal law governs the issue of whether to appoint a receiver in a diversity action." *Canada Life*, 563 F.3d at 843 (rejecting the District Court's apparent use of Idaho law to the appoint a receiver in a federal diversity action, but not reversing because the federal receivership analysis did not significantly differ from the state law analysis). Appointment of a receiver is not an outcome-affecting, substantive right; it is merely a tangential action. *Id.* Therefore, a federal court with diversity jurisdiction over a case must comply with Federal Rule of Civil Procedure 66 ("Rule 66"), even if state receivership law would produce a different result. *Id.* at 842–43. Here, the court's jurisdiction is based on diversity, so it must apply Rule 66.

■ Rule 66 provides that "the practice in administering an estate by a receiver or a similar court-appointed officer must accord with the historical practice in federal courts or with a local rule." FED.R.CIV.P. 66. Requiring courts to adhere to the "normative standard" of historical practice in federal courts ensures uniform appointment of receivers. *Canada Life*, 563 F.3d at 842.

### Discussion

#### A. Motion to Strike

Sterling submitted the Luby Declaration in support of its motion to appoint a receiver, which declaration includes Exhibit 3, an email from a prospective buyer of the Property, and Exhibit 5, a letter from Defendants' attorney to Sterling's attorney. Exhibit 3 to the Luby Declaration is an email sent from Matt Burton, an agent of Homes Worth Keeping, to Sterling and the Defendants on April 26, 2009. In the email, Mr. Burton indicates the status of the Property with respect to a possible sale. He states that the Defendants are

> willing to sell the property to us (Homes Worth Keeping, LLC) and Sterling seems to want to see the property sold. Ken/Citadel wants what would be the balance owed after the short sell to us either to be waived or pushed onto other assets they are still responsible for. Ken/his counsel believe Sterling/counsel is unwilling to do this.

(Luby Decl., Ex. 3 at 1.) In paragraph 4 of his declaration, Mr. Luby stated that:

> Mr. Eagon (a guarantor of the indebtedness) has demanded that Sterling waive any deficiency as a precondition to his signature. Attached as Exhibit 5 is a letter dated April 24, 2009 from counsel for defendants J. Kenyon Eagon, Heather Eagon, and Eagon Capital Ventures, Inc. (the "Eagons"). As explained in Exhibit 5, the Eagons are preventing consideration of the pending sale for the

sole purpose of obtaining a release of any deficiency. They make no objections whatsoever to the price or terras of the sale.

(Luby Decl. ¶ 4.) Exhibit 5 to the Luby Declaration is a letter from Defendants' attorney indicating that Defendants "are unwilling to consent to a short sale on the Scott's Bluff property at a price acceptable to Sterling; however, they are not willing to do so unless Sterling agrees to waive any deficiency/guaranty claims against them regarding the loan on that property," (Luby Decl., Ex. 5 at 1.)

Defendants argue that these exhibits and testimony are inadmissible under Rule 408 because they contain evidence of conduct and statements made during compromise negotiations regarding the claim. Sterling concedes that the statements and conduct were made during compromise negotiations, but it argues that this evidence is admissible based on the purpose for which Sterling has offered it. Sterling argues that Rule 408(b) permits the use of this evidence if the purpose is to show that the Defendants have not agreed to sell the property by "tak[ing] an obstructionist stance, based not on the price or terms of any sale but instead based solely on [their] desire for a release of personal liability for any deficiency." (Pl.'s Resp. to Mot, to Strike at 2.) Because neither party disputes that the contested evidence includes conduct or statements made during compromise negotiations, the court focuses on whether Sterling's proffered use of this evidence is one of the uses permitted under Rule 408(b).

■■ "In determining the admissibility of evidence offered for some other purpose [under Rule 408(b) ], courts will have to consider the language that delineates the scope of the rule as well as the policy that supports it." 23 CHARLES ALAN WRIGHT & KENNETH W. GRAHAM, JR., FEDERAL PRACTICE

& Procedure § 5314 (2009). *See also Hudspeth v. C.I.R.,* 914 F.2d 1207, 1213–14 (9th Cir.1990) (noting that the trial court properly considered the policies of Rule 408 when excluding evidence, but holding that the evidence should have been admitted to show a witness's bias under Rule 408(b)). The court has discretion in weighing the underlying policy of Rule 408 when deciding whether the admission of the evidence accords with the policy of the rule. *See Josephs v. Pacific Bell,* 443 F.3d 1050, 1064 (9th Cir.2006); *Fiberglass Insulators, Inc. v. Dupuy,* 856 F.2d 652, 654 (4th Cir.1988) ("The trial court has discretion on the issue of whether to admit such evidence for another purpose under Rule 408....").

■ The court first considers the express language of Rule 408(b). It must decide whether Sterling's "obstructionist stance" purpose is permissible under the provision of Rule 408(b) that allows admission of compromise evidence to "prov[e] an effort to obstruct a criminal investigation or prosecution." Fed.R.Evid. 408(b). Despite a superficial similarity based on the word "obstruct," the two purposes are materially different, as can be seen by examining the policy that underlies this Rule 408(b) exception. Rule 408(a) reflects the public policy favoring the settlement of disputes by enabling the parties to be candid without fear that their conduct or statements will later be used against them when proving liability, invalidity, or amount of a claim. Fed. R. Evid. 408, advisory committee notes. The 408(b) exception allows offering evidence to prove obstruction of criminal investigation or prosecution to protect a second important policy disfavoring obstruction of criminal justice. *See* 23 *Charles Alan Wright, Kenneth W. Graham, Jr., Federal Practice & Procedure* § 5313 (2009). Here, Sterling is not alleging obstruction of criminal justice. In fact, it is not alleging obstruction of justice of any kind. Instead, Sterling alleges an obstruction of its desire to sell the Defendants' Property. There is no public policy embodied in Rule 408(a) favoring a creditor's unobstructed ability to sell the property used to secure a promissory note before completing the foreclosure process. Therefore, Sterling's negotiation evidence is not admissible under this provision.

■ Next, the court addresses whether Sterling's purpose is permitted under the more general language of Rule 408(b). The list of example uses in 408(b) is illustrative, not exhaustive. *Rhoades v. Avon Products, Inc.,* 504 F.3d 1151, 1162 n. 9 (9th Cir.2007) (citing *United States v. Technic Services, Inc.,* 314 F.3d 1031, 1045 (9th Cir.2002)). The court is authorized to decide whether the evidence is offered for "another purpose," and it should weigh the probative value of the evidence against the purpose of Rule 408, which is to encourage the settlement of disputes. *Dow Chemical Co. v. United States,* 435 F.3d 594, 611 (6th Cir.2006); *Starter Corp. v. Converse, Inc.,* 170 F.3d 286, 293 (2nd Cir.1999); *Trebor Sportswear Co., Inc. v. The Limited Stores, Inc.,* 865 F.2d 506, 510–11 (2nd Cir.1989); *see also Bhandari v. First Nat. Bank of Commerce,* 808 F.2d 1082, 1103 (5th Cir.1987).

Negotiation evidence has been admitted when the probative value was high and admission would not be likely to discourage settlement of future disputes. For example, negotiation evidence has been admitted to prove that a party had notice or knowledge, *United States v. Austin,* 54 F.3d 394, 400 (7th Cir.1995) (admitting evidence to prove a defendant knew certain conduct was wrongful); *Spell v. McDaniel,* 824 F.2d 1380, 1400 (4th Cir.1987) (admitting evidence of a settlement of an earlier police brutality action to prove "aware[ness] of the existence of a developed practice or custom of such conduct"), and to attack the credibility of a witness or

to show bias, *Brocklesby v. United States,* 767 F.2d 1288, 1292–93 (9th Cir.1985). Negotiation evidence has also been admitted for procedural purposes, such as to establish the amount in controversy. *Cohn v. Petsmart, Inc.,* 281 F.3d 837, 840 (9th Cir.2002); *Rising–Moore v. Red Roof Inns, Inc.,* 435 F.3d 813, 816 (7th Cir. 2006). It is also commonly admitted for claims arising out of the settlement process or agreement itself, such as to clarify the terms of the settlement agreement, *Catullo v. Metzner,* 834 F.2d 1075, 1079 (1st Cir.1987); *Basha v. Mitsubishi Motor Credit of America, Inc.,* 336 F.3d 451, 454 n. 4 (5th Cir.2003); *Westchester Specialty Ins. Services, Inc. v. U.S. Fire Ins. Co.,* 119 F.3d 1505, 1512 (11th Cir.1997), to prove breach of the settlement agreement, *Cates v. Morgan Portable Bldg. Corp.,* 780 F.2d 683, 691 (7th Cir.1985) ("Obviously a settlement agreement is admissible to prove the parties' undertakings in the agreement, should it be argued that a party broke the agreement."). *See also Starter Corp. v. Converse, Inc.,* 170 F.3d 286, 293–94 (2nd Cir.1999) (admitting evidence to prove claims of contractual and equitable estoppel based on representations made during negotiations), to defend against an allegation of breach, *Bankcard America, Inc. v. Universal Bancard Systems, Inc.,* 203 F.3d 477, 484 (7th Cir. 2000), to prove bad faith negotiations, *Athey v. Farmers Ins. Exchange,* 234 F.3d 357, 362 (8th Cir.2000) (applying South Dakota law), and to prove other wrongful activity that occurred during the settlement negotiations themselves, *Uforma/Shelby Business Forms, Inc. v. Nat. Labor Relations Board,* 111 F.3d 1284, 1293 (6th Cir.1997) (admitting evidence to prove threats of retaliation made during negotiations). *And see* 23 Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice & Procedure § 5314 (2009) ("Rule 408 is also inapplicable when the claim is based upon some wrong that was committed in the course of the settlement discussions; e.g., libel, assault, breach of contract, unfair labor practice, and the like."). Courts have also used their discretion to admit evidence in other situations, such as to prevent confusion for the jury. *Belton v. Fibreboard Corp.,* 724 F.2d 500, 505 (5th Cir.1984) (admitting settlement evidence for the limited purpose of preventing jury confusion about why certain defendants were not in court). The court does not consider any of the previous examples to be analogous to the purpose for which Sterling offers its evidence here, and defendants have not cited any specific authority in support of their argument that evidence offered to prove an "obstructionist stance" is inadmissible. Therefore, the court will independently decide whether Sterling's use is permissible under Rule 408(b).

First, this evidence has little probative value. Sterling has submitted other evidence showing the value of the Property, the default status of the loan, and the Defendants' failure to agree to sell the Property. Therefore, the contested evidence is not necessary for these purposes. Also, the Defendants' motive in refusing to sell the Property is not relevant to the court's inquiry in deciding whether a receiver is necessary. *See Canada Life,* 563 F.3d at 843 (outlining the factors courts use to appoint a receiver). Although the *Canada Life* decision recognized the court's authority to consider factors other than those listed in the decision, the Defendants' negotiation position is not a factor that indicates the necessity of a receiver, even if Sterling's objectives are obstructed.

Second, allowing admission of evidence of Defendants' settlement conduct and statements in this instance would not promote the policy of encouraging future negotiations and settlements of disputes.

The Defendants would likely be reluctant to engage in candid settlement discussions if they knew that their conduct and statements could later be used against them in litigation.

Third, despite Sterling's argument to the contrary, it appears that Sterling is offering this evidence as an indirect admission of liability by the Defendants. Sterling is offering this evidence to prove liability for the underlying foreclosure action by showing that the defendants have admitted that are likely to lose the Property to Sterling and that they are unable or unwilling to pay the remaining debt. This use is prohibited by Rule 408(a).

Finally, this evidence is not relevant to the issue to be decided by the court. Sterling has since conceded that it no longer seeks to compel the sale of the property, but instead now urges appointment of a receiver to preserve and protect the property. Evidence that Defendants "obstructed" a potential sale of the property and thereby frustrated Sterling's efforts to convert the loan collateral to cash is not probative of whether a receiver should be appointed to preserve and protect the property pending this litigation. Thus, this evidence is not considered for this additional reason.

Therefore, because this evidence has low probative value, because admission would contravene the policies of Rule 408, and because Sterling appears to be using this evidence as indirect proof of liability, the Defendants' motion to strike is granted, and the court will not consider Exhibits 3 and 5 to the Luby Declaration and the portions of paragraph 4 listed above when deciding whether a receiver is necessary.

*B. Motion to Dismiss Sterling's Fourth Claim (Appointment of a Receiver)*

Defendants move to dismiss Sterling's fourth claim for relief (appointment of receiver) for failure to state a claim upon which relief can be granted. To survive a motion to dismiss for failure to state a claim, Sterling must allege facts that show it is entitled to relief. *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955. The word claim itself is defined as the set of factual allegations that give rise to a legally enforceable right or entitlement to relief. *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1264 n. 2 (9th Cir.2006) (*citing* JAMES WM. MOORE ET AL., FEDERAL PRACTICE § 10.03[2][a] at 10–23 (3d ed. 2006)); *Original Ballet Russe, Ltd. v. Ballet Theatre, Inc.*, 133 F.2d 187, 189 (2d Cir.1943) ("[A claim] denote[s] the aggregate of operative facts which give rise to a right of enforcement in the courts."); BLACK'S LAW DICTIONARY 264 (8th ed. 2004) ("[A claim is t]he aggregate of operative facts giving rise to a right enforceable by a court...."). *See also* FED.R.CIV.P. 8(a) ("[A] pleading which sets forth a claim for relief ... shall contain ... (2) a short and plain statement of the claim showing that the pleader is entitled to relief...."). The court will construe all facts alleged by Sterling to be true, *Doe*, 419 F.3d at 1062, but, if those facts do not entitle Sterling to relief, the court should dismiss the claim, *Twombly*, 550 U.S. at 558, 127 S.Ct. 1955 ("[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should ... be exposed at the point of minimum expenditure of time and money by the parties and the court.") (*quoting* 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1216, at 233–34 (3d ed.2004)) (alteration in original and internal quotation marks omitted). Here, the relief Sterling seeks is a receiver. Thus, the court's inquiry turns on whether the facts alleged by Sterling entitle it, as a matter of right, to have a receiver appointed by the court. Sterling argues that it has such a right, but the court does not agree.

*Canada Life* provides that appointment of a receiver is not a substantive right; it is merely an ancillary procedural matter that does not affect the outcome of the case. *Canada Life,* 563 F.3d at 843. The Ninth Circuit characterized a receivership action in this manner while discussing which law applied in a federal court with subject matter jurisdiction based on diversity of the parties. *Id.* Although the question here is different, the Ninth Circuit's statement that a party does not have a substantive right to a receiver is still instructive in deciding whether Sterling's claim for appointment of a receiver should be dismissed for failure to state a claim.

Furthermore, that a receiver is not a matter of right or entitlement is demonstrated by the well-settled principle that the court has broad discretion in deciding whether to appoint a receiver. *Id.* at 845; *Securities and Exchange Comm'n v. Lincoln Thrift Ass'n,* 577 F.2d 600, 606 (9th Cir.1978) ("[I]t is a recognized principle of law that the district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership."); *View Crest Garden Apartments, Inc. v. United States,* 281 F.2d 844, 849 (9th Cir.1960) ("[I]n appointing a receiver with broad authority the Court acted well within the discretionary powers a court of equity exercises in appointing a receiver.") *cert. denied,* 364 U.S. 902, 81 S.Ct. 235, 5 L.Ed.2d 195 (1960); *Guy v. Citizens Fidelity Bank & Trust Co.,* 429 F.2d 828, 833–34 (6th Cir.1970) ("Ancillary appointment of receivers ... is within the sound discretion of the District Judge."); *Jones v. Village of Proctorville, Ohio,* 290 F.2d 49, 50 (6th Cir.1961) ("As a general rule the appointment and discharge of a Receiver are ordinarily matters of discretion in the District Court, with which the Court of Appeals will not interfere."); *Hutchinson v. Fidelity Inv. Ass'n,* 106 F.2d 431, 436 (4th Cir.1939) ("It should not be forgotten that the appointment of a receiver is not a matter of right, but one resting in the sound discretion of the court."); *Peterson v. Islamic Republic of Iran,* 563 F.Supp.2d 268, 277 (D.D.C.2008) ("The appointment of a receiver is an equitable remedy of rather drastic nature available at the discretion of the court...."); *Mercantile Trust Co. v. Missouri, K. & T. Ry. Co.,* 36 F. 221, 224 (C.C.D.Kan.1888) ("The right to foreclose does not carry with it the right to a receiver."); 12 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2983 (2d ed. 2008) ("[T]he appointment of a receiver is not a matter of positive right but rather lies in the discretion of the court ....") (cited by *Peterson,* 563 F.Supp.2d at 277).

The *Canada Life* characterization and the broad discretion vested in the courts to determine whether to appoint a receiver both reveal that appointment of a receiver is not a form of relief to which Sterling, or any other party, can be legally entitled. Without a showing of entitlement, Sterling's claim must be dismissed. *Twombly,* 550 U.S. at 558, 127 S.Ct. 1955. Because the facts alleged by Sterling would not entitle it to a receiver, the court grants the Defendants' motion to dismiss Sterling's fourth claim for relief, but gives Sterling leave to file an amended pleading to set out its request for appointment of a receiver as one of its requested remedies.

## C. Motion to Appoint a Receiver

As an initial observation, appointment of a receiver is an "extraordinary" remedy that should not be granted without consideration of the federal receivership factors. *Canada Life,* 563 F.3d at 844. Furthermore, the court should use caution when appointing a receiver and should make findings on the federal factors. *Solis v. Matheson,* 563 F.3d 425, 438 (9th Cir.2009) (vacating the district court's ap-

pointment of a receiver for failure to adequately discuss the federal factors on record and failure to provide notice to the defendant).

■ Although historical practice has not yielded a precise formula for the appointment of a receiver, court decisions have created a group of factors that a court should consider when deciding whether to appoint a receiver. *Canada Life*, 563 F.3d at 844. Factors that courts consider include;

(1) "whether [the party] seeking the appointment has a valid claim"; (2) "whether there is fraudulent conduct or the probability of fraudulent conduct," by the defendant; (3) whether the property is in imminent danger of "being lost, concealed, injured, diminished in value, or squandered"; (4) whether legal remedies are inadequate; (5) whether the harm to plaintiff by denial of the appointment would outweigh injury to the party opposing appointment; (6) "the plaintiffs probable success in the action and the possibility of irreparable injury to plaintiff's interest in the property"; and, (7) "whether [the] plaintiff's interests sought to be protected will in fact be well-served by receivership."

*Id.* (alterations in original) (*citing* 13 James Wm Moore et al., Moore's Federal Practice 66.04[2][b] (3d ed. 2008)).

■ The Ninth Circuit has also previously applied factors such as "whether the defendant was of doubtful financial standing" and "whether the property was of insufficient value to insure payment." *Canada Life*, 563 F.3d at 844. Evidence of only these two "previously applied" factors may be sufficient to appoint a receiver to collect rents or other revenue from the subject property, but they alone are not sufficient to vest the receiver with managerial powers; "something more" is also required for appointment of a receiver with the added power to manage the prop-

erty. *Id.* at 845 (*quoting View Crest*, 281 F.2d at 847). The additional requirement for managerial receivers may be evidence indicating the risk of economic waste, foreclosure delays, or any other factor that compels appointment of a receiver. *Canada Life*, 563 F.3d at 845 (*citing View Crest*, 281 F.2d at 847). Ultimately, the court has broad discretion in determining whether to appoint a receiver. *See, e.g., Canada Life*, 563 F.3d at 845.

### a. Necessity of an Evidentiary Hearing

Neither the Supreme Court nor the Ninth Circuit has squarely decided whether an evidentiary hearing is required before appointing a receiver. The Eleventh Circuit, however, has stated that, except for certain patent infringement actions, Rule 66 does not require the court to conduct an evidentiary hearing before appointing a receiver. *Citronelle–Mobile Gathering, Inc. v. Watkins*, 934 F.2d 1180, 1189 (11th Cir.1991) (affirming appointment of a receiver without an evidentiary hearing after a judgment on the merit s). The court in *Citronelle–Mobile* stated that an evidentiary hearing was not required because "the files and records of [the] case, together with the pleadings, briefs and uncontroverted assertions of the parties show that appointment of a receiver is warranted." *Id.* (alteration in original).

Similarly, the Fifth Circuit has stated that "[t]he appointment of a receiver, otherwise proper, is not to be defeated for ... the absence of a full evidentiary hearing." *Bookout v. First Nat'l Mortgage and Discount Co., Inc.,* 514 F.2d 757, 758 (5th Cir.1975). The court must base its decision to appoint a receiver on "the moving papers and such answers, affidavits in apposition, or counter-affidavits as may be offered, and also on the testimony of witnesses in open court if the court deems such a hearing advisable." *Santibanez v.*

*Wier McMahon & Co.,* 105 F.3d 234, 242 (5th Cir.1997) (*quoting* 7 JAMES MOORE ET AL., MOORE'S FEDERAL PRACTICE 66.04[3] (2d ed. 1996))

 Regardless of whether it conducts a full evidentiary hearing on the matter, the court is generally required to provide notice sufficient to allow the defendant an opportunity to present evidence; *Solis,* 563 F.3d at 438, The court "has the authority to order a receivership, but only after evidence has been presented and findings made showing the necessity of a receivership." *Id.* Furthermore, the court should state on the record its findings on the factors it used to decide whether to appoint a receiver. *Id.* In *Solis,* the Ninth Circuit vacated the district court's appointment of a receiver in part because "the district court did not consider on the record any of the relevant factors before determining that it would automatically appoint a receiver" and because "the district court should have made findings on [those] factors," *Id.*

 Here, a formal evidentiary hearing is not required. Sterling and the Defendants have both received notice that the court is considering the appointment of a receiver, and both parties have had an opportunity to submit, and have submitted, evidence to the court. The court can use the record before it to make findings regarding each of the *Canada Life* factors, as well as rule on the issue of Defendants' consent to a receiver.

b. The Effect of Consent to Appoint a Receiver.

 The Deed of Trust indicates consent by Citadel to the appointment of a receiver in the event of its default. It provides that the parties have the "strict right" to "apply ... for and obtain appointment of a receiver ... and Grantor [Citadel] hereby consents to such appointment." (Luby Decl., Ex. 1 at 14–15.) Nei-

ther party has argued that this consent provision is invalid or unenforceable.

i. The Effect of Consent on Weighing of the Federal Factors.

 Recognizing that the Defendants have contractually consented to a receiver, the court first must decide whether consent is a dispositive factor or whether the court still must weigh the receivership factors identified in *Canada Life.* Consent by the parties in a deed of trust is a factor that commands great weight, but it is not dispositive. *See New York Life Ins. Co. v. Watt West Investment Corp.,* 755 F.Supp. 287, 292 (E.D.Cal.1991) (noting that, unlike California receivership law, federal receivership law does not allow consent to obviate the requirement of a finding that the property is of insufficient value to secure the loan). At least one court outside the Ninth Circuit has similarly stated that consent by the parties does not allow the court to bypass weighing the relevant factors. *Gage v. First Federal Sav. & Loan Ass'n,* 717 F.Supp. 745, 750 (D.Kan.1989) ("Appointment of a receiver is not automatic because of a clause in the mortgage agreement; the mortgagee must go through the normal legal channels to obtain a receiver.").

The court must also examine the type of consent given. *See id.* Consent to the mere application to a court to appoint a receiver may be materially different from consent to the actual appointment of a receiver. *See id.* (noting that the consent clauses at issue "give the mortgagee (plaintiff) the right to seek or make application for a receiver; they do not give plaintiff an automatic right to the appointment of a receiver."). The *Canada Life* decision is consistent with this distinction. The deed of trust in *Canada Life* indicated the defendant's consent to application to

appoint a receiver. *Canada Life*, 563 F.3d at 840.

Defendants have not consented to mere *application* to appoint a receiver; they have consented to *appointment* of a receiver. Sterling argues that this consent alone justifies appointing a receiver. Sterling relies on *Investors Syndicate v. Smith*, 105 F.2d 611 (9th Cir.1939), which provides that, "if a mortgagor mortgages or pledges the rents and profits of real property ... a court may appoint a receiver to collect them, *by virtue of that fact alone*, in a foreclosure suit." *Id.* at 621 (emphasis added), The facts in *Investors Syndicate*, however, are materially distinguishable from those in the present case in three ways, and the court does not read *Investors Syndicate* to hold that consent is dispositive on the issue of receiver appointment under federal law.

First, the *Investors Syndicate* court relied on *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) to hold that Oregon receivership law, rather than federal receivership law, applied. *Investors Syndicate*, 105 F.2d at 620. Modern federal courts with diversity jurisdiction over a case, such as exists here, apply Rule 66 of the Federal Rules of Civil Procedure, which may require the court to consider factors different from those considered under state laws. *Canada Life*, 563 F.3d at 843. Sterling has not cited any case holding that consent is dispositive under federal receivership law.

Second, the parties in *Investors Syndicate* consented to the appointment of a receiver for the specific purpose of collecting rents on mortgaged apartment buildings, and consent was not given in any of the contracts at issue without the limiting phrase "to collect the rents." *Investors Syndicate*, 105 F.2d at 614. Consent to a receiver for the limited purpose of collecting rents is materially different and distinguishable from consent to a receiver with

the broader scope of managerial powers of the type that Sterling seeks in this case. *See Canada Life*, 563 F.3d at 844–45. The Ninth Circuit has recognized a "distinction ... between a receiver with the power to collect rents ... and a receiver with the additional power to manage the mortgaged property." *Id.* *Investors Syndicate* involved a receiver to collect rents, while Sterling requests a receiver with managerial powers. This difference is material, because the grant of managerial powers, unlike the authority to collect rents, effectively divests the property owner of rights traditionally exercised by an owner.

Third, *Investors Syndicate* involved foreclosure of income-producing apartment buildings that were in jeopardy of waste. *Investors Syndicate*, 105 F.2d at 615–16. There was evidence that the buildings were in need of repairs and maintenance, and that rent income was being mismanaged. *Id.* Therefore, a weighing of the federal factors would have illuminated the necessity of a receiver, even if the defendant had not consented to one. In contrast, the Property presently at issue does not generate income, it does not contain structures, and no evidence of economic waste has been presented. In sum, *Investors Syndicate* does not control or inform the court's decision in the present case.

The *Canada Life* decision recognized that the court may consider other circumstances that disclose reasons to appoint a receiver. *Canada Life*, 563 F.3d at 845. The consent provision in the Deed of Trust is one of these "other circumstances," and the court will consider it in addition to weighing the federal receivership factors espoused in *Canada Life*.

ii. Sterling's Burden of Proof

■ Having decided that contractual consent here does not replace the need to weigh the *Canada Life* factors, the next issue is whether the Defendants' consent

affects Sterling's burden to produce evidence of the factors indicating that a receiver is necessary.

■ Appointing a receiver is an extraordinary remedy that should not be granted unless the party seeking the receiver has met its burden of showing that a receiver is necessary. *See Canada Life,* 563 F.3d at 845 (noting that "the plaintiff must ... show" that the factors are present); *My Fruit, S.A. v. Pac. Sun Mktg.,* 1989 WL 97917, *4 (D.Or.1989) ("Because My Fruit has not met its burden of proof, My Fruit's application for ... appointment of a receiver is denied."); *Securities & Exchange Comm'n v. Republic Nat. Life Ins. Co.,* 378 F.Supp. 430, 438 (D.C.N.Y. 1974) ("The appointment of a receiver pendente lite lies in the discretion of the court and the applicant bears a heavy burden to establish an actual need therefor."); *Wickes v. Belgian Am. Educ. Found., Inc.,* 266 F.Supp. 38, 40 (S.D.N.Y.1967) (refusing to appoint a receiver because the plaintiff did not meet the heavy burden of proving a receiver was necessary). Because consent to a receiver does not affect the court's need to weigh the *Canada Life* factors in determining whether a receiver is necessary, the court concludes that this consent does not reduce the burden on Sterling, the party seeking a receiver, to produce evidence of these factors.

c. Weighing the *Canada Life* Receivership Factors

■ The court's analysis of the *Canada Life* receivership factors begins with the two "previously applied" factors. The first "previously applied" factor is whether Defendants are of doubtful financial standing. *Canada Life,* 563 F.3d at 844. Sterling has presented evidence that the Eagon Defendants and their various business entities, including Citadel, are currently involved in eight foreclosure suits with Sterling. (Reply to Mot. to Appoint Receiver, Ex. 1 at 1.) The total amount sought in all eight suits is $16,366,292.77. (Reply to Mot. to Appoint Receiver, Ex. 1 at 1.) This evidence supports the inference that, because Defendants are involved in so many foreclosures concurrently, the Defendants are of doubtful financial standing. Thus, this factor weighs in favor of appointing a receiver.

The second "previously applied" factor is whether the Property's value is insufficient for the debt it secures. *Canada Life,* 563 F.3d at 844. Sterling has submitted evidence that Defendants owe a principal balance of $1,964,488.01, as well as $148,240.48 in interest, late charges, fees. (Luby Decl. ¶ 5.) Sterling has also submitted evidence that Homes Worth Keeping has offered to purchase the subject property for $1,050,000.00. (Luby Decl., Ex. 4 at 1.) This offer to purchase the property serves as prima facie evidence of the Property's value, and Sterling has satisfied its evidentiary burden on this factor. Therefore, this factor also weighs in favor of appointing a receiver.

The first of the enumerated factors in *Canada Life* is whether Sterling has a valid claim. Unlike cases in which a receiver is appointed after a judgment on the merits, here the court has not had the benefit of a trial or of hearing all the evidence that bears on Sterling's claimed right to foreclose, Sterling has submitted evidence that Defendants are in default on the loan with an outstanding balance, including interest and fees, of over two million dollars. (Luby Decl. ¶ 5.) This testimony serves as prima facie evidence of default by the Defendants, who have not offered any evidence disputing the allegation of default. Thus, Sterling has presented evidence sufficient to prove the validity of its claim, and this factor weighs in favor of appointing a receiver.

The second enumerated factor is whether Sterling has presented evidence of "fraudulent conduct or the probability of fraudulent conduct, by the defendant." *Canada Life*, 563 F.3d at 844. Sterling has not alleged any fraud or misrepresentation by the Defendants. In fact, Sterling has conceded that Defendants have not committed fraud. Therefore, this factor weighs against the appointment of a receiver at the present time.

The third enumerated factor is whether Sterling has submitted sufficient evidence to show that "the property is in imminent danger of being lost, concealed, injured, diminished in value, or squandered." *Id.* Sterling initially focused on harm resulting from its inability to sell the Property without the Defendants' consent; it submitted evidence that "Sterling stands to suffer immediate and irreparable injury, loss, or damage to its collateral if the such sales are lost. For that reason, appointment of a competent receiver is necessary with the power of sale." (Luby Decl. ¶ 4.) Sterling requested a receiver specifically for the purpose of selling the properly without consent by the Defendants. (Luby Decl. ¶ 4.)

 In its reply brief and the supplemental declaration that accompanied it, however, Sterling focused on the claimed need to preserve and protect the Property; it no longer seeks to sell the Property or secure a receiver to enable an expedited sale of the Property. As an initial matter on this point, the court does not regard the loss of potential sale opportunities to constitute imminent danger that the property might be lost, concealed, injured, devalued, or squandered. Beyond that, Sterling also has failed to present sufficient evidence to establish imminent danger to the subject property in other ways. Sterling does not dispute that the Property is composed of vacant lots that do not produce any income. (Supplemental Declaration of Rob-

ert Luby (Supp. Luby Decl.) ¶ 3.) There presently are no structures to maintain or rents to collect. (Supp. Luby Decl. ¶ 3.) Sterling has presented declaration testimony that the Property, although vacant, requires protection and preservation, which includes physically maintaining the Property; preventing trespass, squatting, vandalism, and dumping; and properly insuring the Property. (Supp. Luby Decl. ¶ 3.) The court agrees that insurance, maintenance, and security are important to protect and preserve the Property. However, Sterling has not presented evidence that the property is in imminent danger because it is not insured, maintained, or secured. In fact, Sterling has not submitted evidence that the Properly lacks insurance; that squatters, vandals, or thieves have entered the property; or that the Property has not been maintained. Notably, Defendants are bound by contract to preserve and protect the Property in several specific ways, including by maintaining insurance on it. (Luby Decl., Ex. 1 at 10–11.) In the Deed of Trust, Citadel agreed to insure the Property, to maintain and repair it, to avoid waste, and to do all other acts necessary to secure the Property's value. (Luby Decl., Ex. 1 at 10.) Sterling has submitted no evidence that the Defendants have breached these duties or that they intend to do so.

Sterling has submitted testimony speculating that Defendants lack an incentive to preserve and protect the subject protect Property because they may lose possession of it in the pending foreclosure action and that they lack the resources to take these preservation measures. (Supp. Litby Decl. ¶ 4.) This is not evidence, however, and it does not prove that the Property is in imminent danger. Accordingly, because Sterling has not produced evidence of imminent danger, this factor weighs against the appointment of a receiver at the present time.

The fourth enumerated *Canada Life* factor is whether Sterling's legal remedy, foreclosure of the subject property, is inadequate. *Canada Life*, 563 F.3d at 844. Sterling has not argued or presented evidence that foreclosure, the typical legal remedy for a creditor in this situation, is inadequate. Therefore, this factor weighs against appointing a receiver.

The fifth enumerated *Canada Life* factor is "whether the harm *to* plaintiff by denial of the appointment would outweigh injury to the party opposing appointment." *Id.* The court acknowledges that Sterling could suffer harm if a receiver is not appointed to ensure appropriate protective measures are in place. Important to the court's consideration of this factor is that Sterling has not submitted sufficient evidence to show that it would suffer harm if a receiver is not appointed. In his declaration, Mr. Luby states that Sterling does not presently have authority to enter and inspect the Property. (Supp. Luby Decl. ¶ 5.). He also states that "[s]omeone must verify" insurance, maintenance, and security (Supp. Luby Decl. ¶ 3.), that Defendants might not perform these duties (Supp. Luby Decl. ¶ 4.), and that a receiver should be appointed for this purpose (Supp. Luby Decl. ¶ 4.). This evidence, even when considered in the aggregate, is not sufficient to show that Sterling is likely to suffer harm if a receiver is not appointed. The court concludes that any harm to Sterling that results from denying its motion to appoint a receiver is not sufficient to outweigh the harm Defendants would suffer if a receiver were appointed. This factor weighs against appointing a receiver.

The sixth enumerated factor in *Canada Life* is "the plaintiff's probable success in the action and the possibility of irreparable injury to plaintiff's interest in the property." *Canada Life*, 563 F.3d at 844. Even if the court assumes that the Sterling is likely to prevail, the court record does not demonstrate that the Sterling's interest in the property would be irreparably injured. Again, Sterling has not submitted sufficient evidence that the subject property is currently being harmed or is likely to be harmed, especially not in an irreparable manner. In fact, Sterling's evidence states that "Sterling does not presently know the status of insurance, maintenance, and security." (Supp. Luby Decl. ¶ 5.) Therefore, Sterling has not met its burden of producing evidence that an irreparable injury to its interest is occurring or is likely to occur. This factor weighs against appointing a receiver.

The seventh and final enumerated factor in *Canada Life* is whether Sterling has submitted sufficient evidence to show that its "interests sought to be protected will in fact be well-served by receivership." *Canada Life*, 563 F.3d at 844. Although the court recognizes that Sterling has an interest in the Property, the court, on this record, is not convinced that that interest is unprotected and that a receiver is necessary to protect it. The Deed of Trust requires Defendants to preserve and protect the Property. Sterling has not presented evidence that a receiver would manage the property better than the Defendants, especially because Sterling has not shown that Defendants are managing the Property poorly. Sterling has not produced sufficient evidence to show that a receiver is necessary to protect its interests. Therefore, this factor weighs against appointing a receiver at this time.

After considering each of the enumerated and the "previously applied" *Canada Life* factors individually and weighing them in the aggregate, and considering Citadel's consent to a receiver in the Deed of Trust, the court concludes that Sterling has not shown that appointment of a receiver is necessary and appropriate at the

present time. Therefore, Sterling's motion to appoint a receiver should be denied.

### Conclusion

Defendants' motion (# 19) to strike Exhibits 3 and 5 and portions of paragraph 4 of the Luby Declaration is GRANTED and that evidence is stricken from the record. Defendants' motion (# 16) to dismiss Sterling's fourth Claim for Relief for the appointment of a receiver should be GRANTED. Sterling's motion (# 9) to appoint a receiver should be DENIED.

### Scheduling Order

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due September 2, 2009. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.