IN THE UNITED STATES DISTRICT COURT 
 FOR THE MIDDLE DISTRICT OF ALABAMA 
 NORTHERN DIVISION 

BRANCH BANKING AND TRUST ) 
CO., A FOREIGN CORPORATION, ) 
 ) 
 Plaintiff, ) 
 ) Case No. 2:19-cv-826-ALB 
v. ) 
 ) 
MCINTYRE LAND CO., AN ) 
ALABAMA CORPORATION, ) 
 ) 
 Defendant. ) 
 ) 
 MEMORANDUM OPINION AND ORDER 
This matter comes before the Court on Plaintiff’s motion that a receiver be 
appointed to manage a shopping center. See Doc. 10. Upon consideration, the 
motion is GRANTED. A receiver will be appointed by a separate order. 
 BACKGROUND 
Plaintiff Branch Banking and Trust Co., which has since been renamed Truist 
Bank, (“Truist”) filed this action for the appointment of a receiver to assume control 
over a shopping center owned by Defendant McIntyre Land Co. (“Land”). See Doc. 
1. Before this action, the parties had been engaged in a long-running dispute about 
whether Truist has a lien on the shopping center. The Court recently resolved that 
dispute in Truist’s favor. See In re McIntyre Bldg. Co. Inc., 2019 WL 4984822, at 
*11 (M.D. Ala. Oct. 8, 2019). Land sought to stay this Court’s judgment pending 
appeal, but it did not file the supersedeas bond the Court required as a condition of 
a stay. Accordingly, Truist’s complaint in this case to enforce its lien is ripe for 

decision. 
Three facts are undisputed or have been established in related litigation 

between the parties. First, the note secured by the mortgage on the shopping center 
has not been paid. In fact, payments have not been made for a very long time. 
Second, Land mortgaged the shopping center a second time to another bank. Third, 

Truist’s disputed lien on the shopping center is approximately the same or more than 
the value of the shopping center. In other words, assuming Truist has a lien on the 
shopping center, Land has zero or very little equity in the shopping center. 
Truist argues that, because of the undisputed facts above, Land has no 

incentive to effectively manage or maintain the property pending its appeal of the 
Court’s judgment in the related litigation.1 Accordingly, Truist asks that the firm 
Andrew Bolnick & Associates, Inc. be appointed to manage the property. 

 STANDARD 
It is settled law that, even when sitting in diversity, federal law governs all 
requests for receivership appointments. National Partnership Inv. Corp. v. National 

1 Truist has also submitted evidence that Land has allowed damage to occur on the premises of the 
shopping center. Land disputes that submission. The Court need not resolve that dispute here and 
will not consider Truist’s evidence on this point. The Court also denies Land’s request for an 
evidentiary hearing because all the relevant facts are undisputed or have been established in related 
litigation. 
Housing Development Corp., 153 F.3d 1289,1291–92 (11th Cir.1998). However, 
the Eleventh Circuit “has not addressed how a contractual receivership provision 

impacts the decision whether to appoint a receiver.” Cadence Bank, N.A. v. E. 15th 
St., Inc., 2013 WL 2151743, at *3 (M.D. Fla. May 16, 2013). Therefore, courts 
within this Circuit have been left to devise their own tests. 

 DISCUSSION 
In response to Truist’s request for a receiver, Land has made two arguments. 

Neither is persuasive. 
First, Land argues that it has not defaulted because Colonial Bank, the 
predecessor to Truist, released the shopping center as collateral in December 2006. 
This is the same argument that the Court rejected in the related litigation. The Court’s 

judgment in that case establishes that, regarding Land’s claim for quiet title/breach-
of-contract, “[n]o representative of Land signed anything that would meet the 
dictates of Section 1823(e)-a release, a collateral swap, or Colonial’s letter about the 

collateral swap.” In re McIntyre Bldg. Co. Inc., 2019 WL 4984822, at *10. Because 
Land chose not to stay that judgment pending appeal, it is final. 
Land’s request to relitigate Truist’s quiet title/breach of contract claim in this 
case is barred by the doctrine of res judicata. When determining whether a claim is 

barred by res judicata, a federal court must apply the law of the state in which it sits. 
See Laskar v. Peterson, 771 F.3d 1291, 1299 (11th Cir. 2014). In Alabama, “the 
essential elements of res judicata are (1) a prior judgment on the merits, (2) rendered 
by a court of competent jurisdiction, (3) with substantial identity of the parties, and 

(4) with the same cause of action presented in both actions.” Equity Res. Mgmt., Inc. 
v. Vinson, 723 So.2d 634, 636 (Ala. 1998). With all elements met, any claim is 
barred that was or might have been decided in the prior action. The fourth element 

does not require an exact match between the two actions. Alabama uses the 
“substantial evidence” test to decide if there is sufficient similarity. Id. at 637. 
“Under this test, res judicata applies when the same evidence substantially supports 
both actions.” Kizzire v. Baptist Health Sys., Inc., 441 F.3d 1306, 1308–09 (11th 

Cir. 2006). There was a prior judgment on the merits of this issue, the parties are 
the same, this Court is one of competent jurisdiction and, because both the 
receivership request and the breach-of-contract claim rely on establishing what 

documents Land signed, Land’s arguments are precluded here on the grounds of res 
judicata. 
Land also cannot relitigate the specific issue of whether Truist’s lien is valid 
because that precise issue was resolved in the prior litigation. According to Alabama 

law, the elements of collateral estoppel are whether the issue is (1) identical to the 
one litigated in the prior suit, (2) actually litigated in the prior suit, (3) necessary to 
the prior judgment, and (4) involves the same parties. See Stinnett v. Kennedy, 232 

So. 3d 202, 220 (Ala. 2016). All these elements are met here. As the question of 
the lease’s validity is a predicate to the determination of default, the issue is identical, 
actually litigated, and necessary to the prior judgment. The parties are also identical. 

Accordingly, the issue is precluded from repeat litigation. 
Second, Land argues that a receivership is not an appropriate remedy. More 
specifically, Land argues that a receivership ought not to be granted by this Court 

unless there is fraud, waste, or irreparable injury. Land argues that Truist’s showing 
cannot meet that standard. Truist responds that, because a receivership is provided 
for as a remedy in the contractual agreement, no such showing is necessary. 
The Court concludes that, even under Land’s proposed test, a receiver should 

be appointed. Courts generally apply an equitable test to a motion like Truist’s. The 
Ninth Circuit, for example, has identified the following equitable factors for a court 
to consider: “(i) whether [the party] seeking the appointment has a valid claim; (ii) 

whether there is fraudulent conduct or the probability of fraudulent conduct by the 
defendant; (iii) whether the property is in imminent danger of being lost, concealed, 
injured, diminished in value, or squandered; (iv) whether legal remedies are 
inadequate; (v) the balance of harms as between the party seeking appointment of a 

receiver and those opposing it; (vi) the plaintiff's probable success in the action and 
the possibility of irreparable injury to plaintiff's interest in the property; and (vii) 
whether [the] plaintiff’s interests sought to be protected will in fact be well-served 

by receivership.” PNC Bank, N.A. v. Presbyterian Ret. Corp., 2014 WL 6065778, 
at *5 (S.D. Ala. Nov. 13, 2014) (quoting Canada Life Assur. Co. v. LaPeter, 563 
F.3d 837, 844 (9th Cir. 2009)). 

Having evaluated these factors, the Court concludes that a receiver should be 
appointed for the following reasons. 
First, there is no question that Truist has a strong claim. Truist has already 

succeeded on the merits in the underlying litigation pending an appeal. And it is 
undisputed that Truist’s loan has not been repaid and is in default. Moreover, the 
Court concluded in the related litigation that Truist would suffer irreparable injury 
to its interest if the judgment were stayed without a supersedeas bond. And Land 

failed to provide a supersedeas bond. 
Second, Truist’s claim to a receiver is supported by the express language of 
the underlying mortgage documents. Section 2.04 of the mortgage agreement 

provides that a receivership would take place upon default “without notice” and 
“without regard to the adequacy of any security.” Even if this contract language were 
not dispositive, it is a factor of substantial weight in balancing the equities. See e.g. 
D.B. Zwirn Special Opportunities Fund, L.P. v. Tama Broad., Inc., 550 F. Supp. 2d 

481, 490 (S.D.N.Y. 2008) (holding that such a provision “strongly supported” the 
appointment of a receiver); Sterling Sav. Bank v. Citadel Dev. Co., 656 F. Supp. 2d 
1248, 1260 (D. Or. 2009) (finding that such a provision “commands great weight” 

in the final decision); Cadence Bank, N.A. v. E. 15th St., Inc., 2013 WL 2151743, at 
*3 (M.D. Fla. May 16, 2013) (holding that such contractual provisions are “at a 
minimum…entitled to great weight); PNC Bank, N.A. v. Presbyterian Ret. Corp., 

2014 WL 6065778, at *4 (S.D. Ala. Nov. 13, 2014) (holding that the consent 
provision is one that should be entitled to “substantial weight”). 
Third, the value of the property does not exceed the value of Truist’s lien, 

making this situation ripe for abuse and waste. Compare LPP Mortg. Ltd. v. Ondyn 
Herschelle, 2014 WL 3568577, at *4 (N.D. Cal. July 17, 2014) (denying motion to 
appoint receiver because the value of the property was far greater than the loan). 
The original loan was for 3.1 million dollars. See Doc. 12 at 4. With interest and 

fees, the indebtedness currently stands at about 4.5 million. See Doc. 10-1 at 3. But 
an appraisal in the related litigation found the shopping center parcel to be worth 
about 3.2 million dollars. See 2:12-cv-00555-ALB, Doc. 94-1 at 10. The upshot is 

that Land has little or no financial incentive to maintain the property while the appeal 
is pending. 

Fourth, Truist has no adequate remedy at law. Land’s sister company and 
owner filed for bankruptcy. No payments have been made on the note since April 
27, 2009. 

Fifth, the appointment of a receiver is the most equitable way to balance the 
parties’ competing interests in the property. Because Land did not file a supersedeas 
bond to stay the Court’s judgment in the related litigation, Truist is free to foreclose 
on its lien and sell the shopping center while Land’s appeal is pending. By appointing 

a receiver to manage the shopping center during the appeal, the Court can protect 
Truist’s interest in the property without transferring ownership of the property to 
Truist or a third-party. In the event Land’s appeal is successful, control over the 

property can be transferred back to Land. To ensure that the equities are balanced in 
this way, the Court will prohibit the receiver from selling the property without 
further order of the Court. The Court will also prohibit Truist from pursuing other 
remedies, such as foreclosure, during the pendency of the receivership. 

 CONCLUSION 

Based on the foregoing, Truist’s motion, Doc. 10, is GRANTED. Truist 
assures this Court that the firm of Andrew Bolnick and Associates has a long track 

record of distressed real estate management and carries the necessary insurance. 
Land does not dispute it. Therefore, Bolnick will be appointed as a receiver in a 
separate order. 

DONE and ORDERED this 26th day of June 2020. 

 /s/ Andrew L. Brasher 
 ANDREW L. BRASHER 
 UNITED STATES DISTRICT JUDGE